UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERCEDES VALENTINO FLEMISTER,

        Petitioner,

                                        Case No. 2:16-cv-13126
v.                                      Honorable Victoria R. Roberts

CARMEN D. PALMER,

        Respondent.
_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
## AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

        Petitioner Mercedes Valentino Flemister filed a *pro se* habeas corpus petition challenging his state convictions for first-degree (felony) murder, Mich. Comp. Laws § 750.316(1)(b), two counts of armed robbery, Mich. Comp. Laws § 750.529, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), unlawfully driving away an automobile, Mich. Comp. Laws § 750.413, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Petitioner alleges that his trial attorney was ineffective and that the trial court violated his right of confrontation by allowing the jury to hear testimony about his co-defendant's statements to a relative.

        The State argues in its answer that Petitioner's ineffective assistance of counsel claim lacks merit and that the Michigan Court of Appeals reasonably rejected the claim. The State also argues that Petitioner was not denied his right of confrontation and that

any error was harmless. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the Court will deny the petition.

## I. Background

The Michigan Court of Appeals summarized the facts leading to Petitioner's arrest and convictions as follows:

> On December 7, 2011, defendant and his half-brother Dale Freeman embarked on a crime spree in Detroit. First, they stole a minivan. They then robbed a woman, at gunpoint, at a gas station. Finally, while looking for other victims, they saw a lone man walking down the street to work. Defendant and Freeman abducted the man and forced him to take them to his home. After arriving at his house, defendant went inside with the victim, while Freeman remained in the stolen car.[1] In the course of [a] robbery, defendant shot the victim, killing him.
> . . . .
>
> The wife of the murder victim unequivocally identified defendant as her husband's assailant in court, and the victim of the gas station robbery identified defendant as the man that robbed her. The police . . . found defendant's fingerprint on a roll of tape in the car used in the crimes. Moreover, defendant's cousin . . . testified that defendant told him that defendant and Freeman stole a car, searched for robbery victims, abducted the homeowner, robbed the homeowner in his home, and shot him.

*People v. Flemister*, No. 317459, 2014 WL 7441311, at *1, *2 (Mich. Ct. App. Dec. 30, 2014) (footnote in original) (emphasis omitted).

Petitioner was extradited from Texas about six months after the crimes. He and Freeman were tried jointly before a single jury in Wayne County Circuit Court. Neither one testified. Petitioner did not present witnesses. His defense was that the prosecution did not prove its case beyond a reasonable doubt. Defense counsel argued

---

[1] Freeman was rendered paraplegic by gunshot wounds after an altercation in 2010.

2

to the jury that the photo show-up was tainted, the man in the surveillance video at the gas station did not resemble Petitioner, the victims' description of the perpetrator did not match Petitioner, no independent evidence corroborated the identifications, and Petitioner's cousin, Spencer Flemister, was not a credible witness because he got a good deal for testifying against the defendants.

Freeman's only witness was his, and Petitioner's, mother (Diana Flemister) who testified that, since Freeman's spinal-cord injury in 2010, she was his care-giver and that Freeman was always at home with her. Mrs. Flemister testified that Petitioner did a lot of truck driving and was living out of state or traveling between Texas and Detroit at the time of the crimes.

Freeman's defense was that he was present during the crimes, but that he did not assist in committing them, and that he did not know the other person intended to commit the crimes. He also maintained, like Petitioner, that their cousin Spencer was not believable.

On June 19, 2013, the jury found Petitioner guilty, as charged, of first-degree (felony) murder, two counts of armed robbery, first-degree home invasion, unlawfully driving away an automobile, felon in possession of a firearm, and possession of a firearm during the commission of a felony.[2] On July 3, 2013, the trial court sentenced Petitioner to two years in prison for possession of a firearm during the commission of a felony, followed by life imprisonment for the murder and concurrent prison terms of 75 to

---

[2] The jury found Freeman guilty of the same crimes, with the exception of the firearm offenses, for which he was not charged.

150 years for the two robberies, ten to twenty years for the home invasion, and three to five years for being a felon in possession of a firearm and unlawfully driving away an automobile.

In an appeal of right, Petitioner argued through appellate counsel that his trial attorney was ineffective and that the trial court erred by allowing his cousin to testify about Freeman's statements to their cousin regarding Petitioner's involvement in the crimes. Petitioner argued in a *pro se* supplemental brief that the prosecutor's comments about Petitioner being visible in a photograph and surveillance video encroached on the province of the jury.

While the appeal remained pending, Petitioner moved to remand his case to the trial court for an evidentiary hearing on his claim about trial counsel.[3] The Michigan Court of Appeals granted the motion for a remand and retained jurisdiction. *See People v. Flemister*, No. 317459 (Mich. Ct. App. Apr. 16, 2014). Petitioner subsequently moved for a new trial. The trial court held an evidentiary hearing and denied the motion for a new trial.

The Michigan Court of Appeals affirmed Petitioner's convictions. *See Flemister*, 2014 WL 7441311. The Michigan Supreme Court denied his subsequent application for

---

[3] In Michigan, an evidentiary hearing on a claim of ineffective assistance of counsel is called a Ginther hearing. *See People v. Ginther*, 390 Mich. 436, 441-42; 212 N.W.2d 922, 924 (1973) (stating that, "[w]hen a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion.").

leave to appeal because it was not persuaded to review the issues. *See People v. Flemister*, 497 Mich. 1029; 863 N.W.2d 53 (2015). On August 29, 2016, Petitioner filed his habeas corpus petition.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal habeas petitioners who challenge

> a matter "adjudicated on the merits in State court" to show that the relevant state court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Deciding whether a state court's decision "involved" an unreasonable application of federal law or "was based on" an unreasonable determination of fact requires the federal habeas court to "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims," *Hittson v. Chatman,* 576 U.S. ——, ——, 135 S.Ct. 2126, 2126, 192 L.Ed.2d 887 (2015) (GINSBURG, J., concurring in denial of certiorari), and to give appropriate deference to that decision, *Harrington v. Richter,* 562 U.S. 86, 101–102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018). When, as in this case, the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. at 1192.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

5

"AEDPA thus imposes a 'highly deferential standard for evaluating state court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). In fact, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.3d 310, 318 (6th Cir.2004) (citing 28 U.S.C. § 2254(e)(1)).

### III. Analysis

### A. Alleged Ineffective Assistance of Counsel

Petitioner alleges that his trial attorney was ineffective because the "attorney's performance amounted to no lawyering at all." Pet. at 4. More specifically, Petitioner contends that his trial attorney (1) fell asleep several times during the trial, (2) did not move to suppress the photo array presented to the victims even though the array

6

violated protocol, (3) failed to request a separate trial, or at least a separate jury, for him, and (4) did not object to the introduction of fingerprint evidence that violated accepted scientific principles. *Id.* Petitioner argues that prejudice may be presumed without any inquiry into actual performance because he was deprived of counsel at a critical stage and because defense counsel failed to subject the prosecution's case to meaningful adversarial testing. Brief in Support of Pet., at 15-17.

The Michigan Court of Appeals determined that these claims were meritless and/or contradicted by the record. The Court of Appeals concluded that Petitioner utterly failed to demonstrate that his lawyer's representation fell below an objective standard of reasonableness. The Court of Appeals also stated that, because the prosecution presented overwhelming evidence of Petitioner's guilt, Petitioner was unable to show that the result of the proceeding would have been different were it not for counsel's unprofessional errors.

### 1. Legal Framework

Petitioner argues that prejudice must be presumed because defense counsel's failures deprived him of meaningful adversarial testing and the assistance of counsel at a critical stage. The Supreme Court stated in *United States v. Cronic*, 466 U.S. 648, 658-59 (1984), that no specific showing of prejudice is required if the accused was denied counsel at a critical stage of his trial or if counsel failed to subject the prosecution's case to meaningful adversarial testing.

The record indicates that defense counsel actively represented Petitioner. He made pretrial motions, participated in *voir dire*, made an opening statement, cross-

7

examined witnesses, made appropriate objections during trial, provided advice to Petitioner on a possible defense and whether to testify, and made a closing argument. Given defense counsel's active participation at Petitioner's trial, *Cronic's* presumption of prejudice for the constructive denial of counsel does not apply here. Instead, the "clearly established Federal law" is *Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not

8

whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

**2. Application**

**a. Falling Asleep at Trial**

Petitioner contends that his trial attorney fell asleep several times during his trial and was unable to assist him properly. Petitioner raised the same contention at the *Ginther* hearing in state court, but he stopped short of saying that he brought the matter to the trial court's attention. Instead, he said that it was obvious to the trial judge and other people that counsel fell asleep. (7/10/14 *Ginther* Hr'g Tr. at 6, 14-16.)

Petitioner's mother also testified at the *Ginther* hearing that defense counsel slept during trial. She admitted, however, that the only time she was in the courtroom was near the end of the trial when she testified. *Id.* at 57-58.

Defense counsel testified at the hearing that he was not aware of having fallen asleep, and he denied Petitioner's claim that the trial court adjourned the case one day because defense counsel was sleeping. He explained that he had a condition known as sleep apnea, which caused him to make noises that sound like snoring even when he is not sleeping. (7/10/14 *Ginther* Hr'g Tr. at 35-37, 44-46.)

The trial judge stated at the *Ginther* hearing that he did not notice defense counsel falling asleep and that he would have stopped the trial if that occurred. *Id.* at 81-82. The Michigan Court of Appeals had "no reason to doubt the trial court's conclusion." *Flemister*, 2014 WL 7441311, at 3 n.6.

The record tends to support the state courts' implicit finding that defense counsel did not sleep during Petitioner's trial. Defense counsel was an active participant in the proceedings. He cross-examined witnesses and made frequent objections. The record does *not* support Petitioner's contention that the trial court adjourned the trial one day because defense counsel was sleeping.

The state courts' factual findings on the issue are presumed correct under 28 U.S.C. § 2254(e)(1), because Petitioner has not rebutted the presumption with clear and convincing evidence. In addition, because the *Strickland* standard applies here, whether counsel's performance prejudiced the defense is relevant. Petitioner has not shown that counsel's allegedly deficient performance prejudiced his defense. Thus, Petitioner has no right to relief on the basis of his claim.

### b. Failure to Object or File Motions

Petitioner alleges next that his trial attorney failed to move to suppress the photo array, which was shown to two of the victims, and also failed to object to the introduction of fingerprint evidence. These claims lack merit because defense counsel *did* attempt to suppress the photo array. He also joined in the co-defendant's motion regarding the reliability of the fingerprint evidence. *(*3/15/13 Mot. Hr'g Tr. at 5-17, 28-31.) The trial court heard oral arguments on the motions and denied them from the bench. *Id.* at 43-44. Counsel was "not ineffective merely for failing to obtain a desired ruling from the [trial] court." *Hodge v. Haeberlin*, 579 F.3d 627, 645 (6th Cir. 2009).

### c. Failure to Move for Separate Juries or Separate Trials

In his final claim about trial counsel, Petitioner alleges that his attorney should have moved for a separate trial from Freeman or at least requested a separate jury. Petitioner argues that he was convicted in part due to the joint trial because the jury was permitted to hear about Freeman's prior "bad acts" and Freeman's statements to their cousin Spencer Flemister.

The Michigan Court of Appeals opined that this was the only non-frivolous claim that Petitioner raised on appeal. The Court of Appeals went on to say that "even this assertion fail[ed] to demonstrate ineffective assistance." *Flemister*, 2014 WL 7441311, at *3. In reaching this conclusion, the Court of Appeals correctly pointed out that, at the *Ginther* hearing, defense counsel "stated that he considered whether to request a separate trial, but decided against it because neither defendant placed blame on the other, or sought to exonerate himself at the expense of the other." *Id*.; *see also* 7/10/14 *Ginther* Hr'g Tr. at 28-29, 34 (defense counsel's testimony that he did not see the need to sever the cases because the two defendants were not pointing fingers at each other).

Defense counsel admitted at the *Ginther* hearing that separate juries would have been beneficial, but he stated that he did not think he had a right to move for separate juries because neither defendant was blaming the other defendant. (7/10/14 *Ginther* Hr'g Tr. at 32-33.) This was a reasonable conclusion, as Freeman did not have an antagonistic defense.

The trial court's jury instructions, moreover, mitigated any prejudice that may have resulted from the joint trial. The trial court explained that the jurors must evaluate

the evidence separately as to each defendant and reach a decision on each count as it applied to each defendant. The court also stated that, if the jurors reached a decision about one defendant on one count, they did not have to render the same verdict on the other defendant. (6/18/13 Trial Tr. at 164.)

As for the prior "bad acts" evidence, the trial court instructed the jurors that they could consider the evidence only when determining whether the evidence tended to show that the defendants had a plan, system, or characteristic scheme. The trial court charged the jurors not to consider the evidence for any other purpose. *Id.* at 172-73.

The trial court also instructed the jurors on how to evaluate Spencer Flemister's testimony. *Id.* at 173-74. Furthermore, as the Michigan Court of Appeals pointed out on review of Petitioner's claim, the prosecution could have produced Spencer Flemister as a witness even if Petitioner had been tried without Freeman.

To conclude, defense counsel arguably satisfied *Strickland's* deferential standard. Even if he was remiss in failing to seek a separate trial or separate jury, the deficient performance did not prejudice Petitioner. Two of the three instances of prior "bad acts" did not involve Petitioner, and evidence about a third incident that did involve Petitioner could have been admitted if he had a separate trial. The prosecution also could have produced Spencer Flemister at a separate trial.

The state court's conclusion - that Petitioner claims about defense counsel lacked merit – was not contrary to, or an unreasonable application of, *Strickland*. Habeas relief is not warranted on Petitioner's claim.

12

**B. The Alleged Violation of the Confrontation Clause**

Petitioner alleges that the trial court deprived him of his constitutional right to confront the witnesses against him by allowing the jury to hear statements that Freeman made to Spencer Flemister before trial. According to Spencer, Freeman informed him that, on the night of the crimes, he and Petitioner spotted an older man walking down the street while they were looking for someone to rob. Freeman told Petitioner to "get" the man. Petitioner then got out of the car and robbed the man. (6/17/13 Trial Tr. at 96-98.) Petitioner argues that this testimony violated his right to confront the witnesses against him because Freeman did not testify at their joint trial, and he could not cross-examine him about his pretrial statements to Spencer.

The Michigan Court of Appeals concluded on review of Petitioner's claim that the trial court properly admitted Spencer Flemister's testimony about Freeman's statements, because the statements were not testimonial. The Court of Appeals also determined that the statements were admissible under an exception to Michigan's hearsay rule. Finally, the Court of Appeals stated that any error in admitting the statements was harmless due to the overwhelming evidence against Petitioner and the fact that Spencer Flemister also testified about Petitioner's admissions to him.

   **1. Clearly Established Federal Law**

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases the right to be confronted with the witnesses against them. U.S. CONST. amend. VI. This right is "applicable to the States through the Fourteenth

Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and it "includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

"The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." *Giles v. California*, 554 U.S. 353, 358 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). Stated differently, "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68.

Freeman was unavailable at trial because he exercised his right not to testify, and there was no prior opportunity to cross-examine him. The Confrontation Clause, however, applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford*, 541 U.S. at 51).

> A statement is testimonial if a reasonable person in the declarant's position would have anticipated the use of the statement in a criminal proceeding. *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir.2004). Thus, statements made to police in the course of an official investigation are testimonial. *United States v. Gibson,* 409 F.3d 325, 338 (6th Cir. 2005). By contrast, statements made to friends and acquaintances are non-testimonial. *See Crawford,* 541 U.S. at 51, 124 S.Ct. 1354 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."); *United States v. Johnson,* 440 F.3d 832, 843 (6th Cir. 2006) (holding statements non-testimonial because defendant had a "longstanding and close association" with declarant); *United States v. McCullough,* 150 Fed. Appx. 507, 509 (6th Cir. 2005) (holding statements to a "companion" non-testimonial).

*United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011).

### 2. Application

Freeman made his disputed remarks to Spencer Flemister while the two of them were in a holding cell for an unrelated crime. Freeman could not have anticipated that his comments to a close relative would be used against him in an unrelated criminal proceeding. Spencer, in fact, testified that he did not want to be testifying against his cousins and that he was testifying pursuant to a plea agreement. (6/17/13 Trial Tr. at 80-81, 84-85.) Therefore, Freeman's remarks to Spencer were not testimonial, and Petitioner's right of confrontation was not violated by Spencer's testimony about Freeman's statements implicating Petitioner in the crimes committed on December 7, 2011.

Furthermore, errors under the Confrontation Clause are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007). On habeas review, an error is considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).

Spencer Flemister testified not only about Freeman's statements to him, but also about Petitioner's statements to him. According to Spencer, when he asked Petitioner why the police were looking for him, Petitioner told him that he and Freeman stole a van, looked for a victim, robbed an old man that was walking down the street, and took the man back to a house on Edinborough. Petitioner further admitted to Spencer that he and the man went inside the house while Freeman stayed in the car. Once inside

15

the house, the man reached for a gun.  Petitioner then shot the man in the head and took some jewelry, which he later pawned.  (6/17/13 Trial Tr. at 85-93.)

In light of Spencer's testimony about Petitioner's admissions and the other overwhelming evidence against Petitioner, Freeman's statements to Spencer in all likelihood did not have a substantial and injurious effect on the jury's verdict.  Therefore, the alleged error under the Confrontation Clause was harmless, in addition to being meritless.

## IV.  Conclusion

The state appellate court's adjudication of Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  The Court, therefore, denies Petitioner's application for the writ of habeas corpus.

Petitioner may not appeal this opinion and order without a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not conclude that Petitioner's claims deserve encouragement to proceed further.  Accordingly, the Court declines to issue a certificate

of appealability. The Court nevertheless will allow Petitioner to proceed *in forma pauperis* on appeal, because the Court allowed him to proceed *in forma pauperis* in this action, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

                                                s/ Victoria A. Roberts
                                                VICTORIA A. ROBERTS
                                                UNITED STATES DISTRICT JUDGE

Dated: 4/12/19